## CHEE KIT *v.* LEE LUNG.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 25, 1903.          DECIDED JUNE 13, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A party may abate as a nuisance so much of a dam in a stream as is necessary to enable him to obtain the water to which he is entitled at a point below the dam.

In an action for assault and battery for resisting an effort to prevent
   such abatement, it is error to exclude evidence that the dam is a
   nuisance (on the theory that, assuming it to be a nuisance, the
   defendant could not lawfully continue in his attempt at abate-
   ment after the plaintiff interfered—because of the danger of a
   breach of the peace)· and then to instruct the jury that the defend-
   ant had shown no right to justify his attempt to cut down any
   part of the dam, and that the plaintiff was justified in resisting
   such breaking or cutting down by the use of necessary force.

### OPINION OF THE COURT BY FREAR, C.J.

This is an action for assault and battery committed, as con-
tended, by the defendant upon the plaintiff while the latter
was attempting to prevent the former from abating an alleged
nuisance.

The parties occupied different lands some distance from
a certain dam, made of stone and cement, in the Manoa stream.
The plaintiff obtained his water through a ditch leading from
one end of the dam. The defendant obtained his from a point
in the stream below the dam, the water flowing down the stream
to that point through a notch in the middle of the dam. It
being a time of drought and the defendant and two others not
being able to get water, as they claimed, because the plaintiff
took it all at the dam, they were in the act of lowering the
notch in the dam when the plaintiff came up and attempted to
stop them, whereupon a contest ensued in which the plaintiff
was hurt to some extent. There is some dispute as to who
began the fight and as to just how the plaintiff was hurt—
whether by a blow from the defendant or by slipping when
attacking the defendant and then sliding down the outer slope
of the dam to its bottom.

The plaintiff's theory ·is that, assuming the fact of nuisance
and the defendant's general right to abate it, that right did
not go to the extent of permitting a breach of the peace and
consequently that it was the defendant's duty to cease his at-
tempt at abatement as soon as he was resisted and then to have

recourse to the courts to enforce his rights, and that he was liable for all that he did in excess of his rights.

If the plaintiff and the court had adhered to that theory throughout the case, perhaps the verdict might be sustained, though as to that we express no opinion, but after relying on that theory for the purpose of excluding the evidence offered by the defendant to show that he had a water right, that the dam interfered with that right and that he had a right to abate it, the plaintiff and the court proceeded on a different theory for the purpose of getting and giving an instruction that the defendant had shown no right to justify his attempt to break or cut down any part of the dam and that the plaintiff was justified in resisting such breaking or cutting down by the use of necessary force. The defendant excepted to the exclusion of the evidence and giving of the instruction.

The giving of the instruction, especially after the exclusion of the evidence, was clearly prejudicial error. It practically amounted to a direction for a verdict for the plaintiff, and that, too, on propositions that the defendant was denied the right to disprove. The evidence was excluded on the theory that the action was only for the excess to which the defendant went after beginning lawfully, but the instruction was given on the theory that the defendant was a wrongdoer *ad initio*. Moreover, the instruction was prejudicial in itself aside from the exclusion of the evidence. Its first part implied that one could not abate a nuisance of this kind, at least that if he should continue after resistance was offered he would be a wrongdoer from the start. That one may remove so much of a dam as interferes with his right of water in a stream is beyond question. *Colburn v. Richards,* 13 Mass. 420; *Stiles v. Ladd,* 5 Cal. 123. How far he may go after resistance depends on the circumstances. See *Perry v. Fitzhowe,* 8 Q. B. 757; *Burling v. Read,* 11 Q. B. 904; *Davies v. Williams,* 16 Q. B. 546; *Jones v. Jones,* 1 H. & C. 1. The last part of the instruction declared the plaintiff a rightdoer from the start. Even if the defendant were a wrongdoer after resistance was offered, it

would not follow that the plaintiff was a rightdoer. They may both have been wrongdoers. If the defendant was acting within his rights in abating the nuisance, the plaintiff had no right to interfere with him, even if the defendant would not be justified in committing a breach of the peace in order to prevent such interference.

The exceptions are sustained, the verdict set aside, a new trial ordered and the case remitted to the Circuit Court.

*Robertson & Wilder* for plaintiff.

*J. A. Magoon and J. Lightfoot* for defendant.